826 So.2d 482 (2002)
Charles W. LYSTER, Appellant,
v.
FLORIDA UNEMPLOYMENT APPEALS COMMISSION and Southern Refrigerated Transportation, Appellees.
No. 1D01-4411.
District Court of Appeal of Florida, First District.
September 20, 2002.
*483 David M. Noll, Esquire of Kievit, Kelly & Odom, Panama City, for Appellant.
Geri Atkinson-Hazelton, General Counsel and John D. Maher, Esquire, Tallahassee, for Appellee Unemployment Appeals Commission.
BENTON, J.
Charles W. Lyster appeals an order of the Unemployment Appeals Commission disqualifying him from receiving unemployment compensation benefits on the basis of "misconduct connected with ... work." § 443.101(1)(a), Fla. Stat. (2001). Because the employer did not prove carelessness or negligence of the kind the statute requires (and has not alleged any other misconduct), we reverse. Carelessness that does not "manifest culpability, wrongful intent, or evil design" does not constitute "misconduct" within the meaning of section 443.036(29)(b), Florida Statutes (2001).
Until he was fired, Mr. Lyster worked for Southern Refrigerated Transportation (SRT) as a long haul truck driver. The unemployment compensation appeals referee denied unemployment compensation benefits on the ground that the
record reflects the claimant was discharged on March 26, 2001, due to a number of accidents. The claimant had five accidents[1] within a ten-month period of time. The employer attempted to rectify the situation by retraining the claimant on two separate instances. The claimant's actions were careless and not in the employer's best interests. It is concluded, he was discharged due to misconduct connected with work....
The Unemployment Appeals Commission affirmed the appeals referee's decision, finding it supported by competent substantial evidence, and describing it as "a reasonable *484 application of the pertinent laws to the facts of the case."
The burden to prove misconduct rests on the employer. See SKF Mgmt. v. Unemployment Appeals Comm'n, 664 So.2d 345, 347 (Fla. 5th DCA 1995) ("[T]he employer has the burden of proving that the act or acts complained of constitute `misconduct' sufficient to disqualify the employee from receiving unemployment compensation benefits.") citing Gunther v. Barnett Banks, Inc., 598 So.2d 243, 245 (Fla. 2d DCA 1992); Sheriff of Monroe County v. Unemployment Appeals Comm'n, 490 So.2d 961, 962 (Fla. 3d DCA), rev. denied, 500 So.2d 544 (Fla. 1986). Accord Pascarelli v. Unemployment Appeals Comm'n, 664 So.2d 1089, 1091 (Fla. 5th DCA 1995); Paul v. Jabil Circuit Co., 627 So.2d 545, 546 (Fla. 2d DCA 1993). Under section 443.036(29)(b), Florida Statutes (2001), carelessness or negligence may constitute misconduct rendering an applicant ineligible to receive unemployment benefits, but only in certain, specified circumstances. The statute requires
[c]arelessness or negligence of such a degree or recurrence as to manifest culpability, wrongful intent, or evil design or to show an intentional and substantial disregard of the employer's interests or of the employee's duties and obligations to his or her employer.
At issue here is whether the Commission and the appeals referee erred in concluding that SRT proved that the accidents Mr. Lyster had were the product of carelessness or negligence of the kind the statute defines as disqualifying. Absent disqualification, "[e]ntitlement to unemployment compensation benefitsdesigned to ameliorate `the serious social consequences of unemployment,' § 443.021, Fla.Stat. (1995)is a matter of statutory right." Gilbert v. Dep't of Corr., 696 So.2d 416, 417 (Fla. 1st DCA 1997). "Courts should narrowly construe the disqualification provisions, and should liberally construe the statute in favor of the claimant when determining whether a claimant's actions constitute misconduct in accordance with its remedial nature." Webb v. Rice, 693 So.2d 1109, 1111 (Fla. 3d DCA 1997).
Despite the number of accidents, the record contains no evidence that Mr. Lyster's carelessness or negligenceassuming inattention instead of ineptitude amounted to the kind required under section 443.036(29)(b). See Maxfield v. Unemployment Appeals Comm'n, 716 So.2d 859, 860 (Fla. 5th DCA 1998); Poole v. J.B. Hunt Transp., 703 So.2d 1158, 1159-60 (Fla. 2d DCA 1997); Williams v. Unemployment Appeals Comm'n, 484 So.2d 89, 90 (Fla. 5th DCA 1986). Multiple accidents alone do not render a claimant ineligible for benefits. See Frazier v. Home Shopping Club, L.P., 784 So.2d 1190, 1192 (Fla. 2d DCA 2001). The record contains no evidence that the accidents were the result of driving recklessly or at excessive speeds. Compare Trinh Trung Do v. Amoco Oil Co., 510 So.2d 1063, 1065 (Fla. 4th DCA 1987), with Poole, 703 So.2d at 1159. As far as the record reveals, Mr. Lyster received a traffic citation for none of the accidents. See Maxfield 716 So.2d at 861; Poole, 703 So.2d at 1159.
The negligence SRT established does not, in short, "manifest culpability, wrongful intent, or evil design." § 443.036(29)(b), Fla. Stat. (2001).
Whether an employee works in a factory, a restaurant, or driving a truck, the employer may have good cause to terminate the worker for inattention or clumsiness that results in several preventable accidents. Merely having a company rule requiring employees to be careful, however, does not transform several negligen[t] acts into misconduct.
*485 Poole, 703 So.2d at 1159. Nor was Mr. Lyster's negligence shown to amount to an intentional disregard of SRT's interests. See Maxfield, 716 So.2d at 860-61.
Although his negligence (or lack of driving skill) may well justify SRT's decision to terminate himnobody has argued otherwise it does not justify forfeiture of Mr. Lyster's unemployment compensation benefits. See Poole, 703 So.2d at 1159-60; Williams, 484 So.2d at 90. See generally Spink v. Unemployment Appeals Comm'n, 798 So.2d 899, 901-02 (Fla. 5th DCA 2001). In the present case, as in Fisher v. Unemployment Appeals Commission, 820 So.2d 379, 380 (Fla. 5th DCA 2002), "[w]e agree with the appellant [who argues in effect] that the instant record reflects incompetence, not misconduct."
Reversed.
VAN NORTWICK, J., concurs; BOOTH, J., dissents.
NOTES
[1] Uncontroverted testimony established that none of the accidents occurred at high speed (backing up seemed to pose a challenge) and that three of the accidents (all of which Mr. Lyster duly reported) occurred at night in areas that were ill lit, if at all. The referee found:

The claimant was employed as an over-the-road truck driver for a transportation company from February 24, 2000, until March 26, 2001. On May 25, 2000, the claimant backed his vehicle into another vehicle. The claimant received remedial training at that time. On June 30, 2000, the claimant was making a left turn and hit another vehicle. On August 20, 2000, the claimant hit a concrete post with his trailer. On February 2, 2001, the claimant was backing his trailer and hit another vehicle. The claimant was retrained on February 19, 2001. On March 17, 2001, the claimant was driving his vehicle and hit the roof of a building. The claimant was discharged on March 26, 2001, due to these accidents.
Mr. Lyster testified that the accident on March 17, 2001, which precipitated his discharge occurred because he was exhausted from job-related duties; and that the damage to the overhanging roof near the traffic island was minor, a fact he documented (by taking photographs) to protect SRT against an inflated claim.
He testified further that the accident on February 2, 2001, resulted in nothing more than a dent to another truck's mirror; that the accident on August 20, 2000, caused very slight damage to the trailer only; that the June 30, 2000, accident took place at a truck stop where the traffic was tight; and that the May 25, 2000, accident occurred in an area not well designed for long trailers like the one he was hauling at the time.